United States District Court
Southern District of Texas
**ENTERED**
October 14, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ANTHONY RAY MATA, SR., | § | |
| as next friend of Corey Mata, *et al* | § | |
| | § | |
| *Plaintiffs*, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-00155 |
| | § | |
| FREEPORT MCMORAN INC., *et al.* | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anthony Ray Mata ("Mata"), filed this action against Defendants Freeport-McMoRan Oil & Gas LLC ("Freeport"), Gulf Crane Services, Inc. ("Gulf Crane"), and C & D Production Specialist Co., Inc., ("C & D Production") asserting claims for personal injury under the Outer Continental Shelf Lands Act, 43 U.S.C. §1301.

Pending before the Court is Gulf Crane's Motion to Transfer Venue to the Western District of Louisiana, Lafayette Division, pursuant to 28 U.S.C. § 1404 (Dkt. 25). Gulf Crane's Motion to Transfer Venue was subsequently adopted and incorporated by Freeport (Dkt. 31) and C &D Production (Dkt 32). Having reviewed the motion, the briefing and evidence, and the governing legal authorities, the Court **DENIES** the Motion(s) to Transfer.

## BACKGROUND

Anthony Mata, Sr., a citizen and resident of Louisiana, alleges that on June 12, 2015, his adult son Corey was an offshore worker traveling to Freeport's offshore platform "located at High Island offshore Texas." During transfer from a vessel onto the

platform via a personnel basket, Corey was injured and suffered traumatic brain and body injuries. The crane operator worked for Defendant Gulf Crane. The platform, located in High Island Block A 537, was operated by Defendant C & C Production. *Id*. Mata alleges that Corey endured a "lengthy hospitalization" in Galveston, Texas.

On June 15, 2015, Mata filed this personal injury lawsuit in this Court, in the Southern District of Texas, Galveston Division. In his Original Complaint, Mata named only "Freeport McMoRan Inc.", which he alleged was "a Delaware corporation with its principal place of business in Phoenix, Arizona, doing business in this District, Division, and the state of Texas." His Original Complaint did allege, however, that Corey was injured by basket transfer and specifically complained about the crane operator. Dkt. 1. On June 23, 2015, Mata filed a First Amended Complaint, again naming only Freeport McMoRan Inc., but again alleging Corey had been injured in a personnel basket and complaining of the crane operator. Dkt. 4. Mata's Second Amended Complaint was filed on June 25, 2015, again naming only Freeport McMoRan Inc. and complaining that Corey was injured in the basket transfer. Dkt. 5. Mata's Third Amended Complaint was filed on November 23, 2015. Dkt. 12. In this Third Amended Complaint, in addition to Freeport McMoRan, Mata named Gulf Crane Services, Inc. as a defendant. Dkt. 12. Mata did not, however, serve Gulf Crane at that time. Instead, he waited until six months after this Court issued its Docket Control Order, and two months after the deadline to amend pleadings had passed, before he again sought to amend his complaint. Dkt. 18.

Mata's Fourth Amended Complaint, his live pleading, was filed on May 10, 2016. Dkt. 21. This Fourth Amended Complaint named "Freeport-McMoRan Oil & Gas LLC",[1] Gulf Crane, and C&D Production Specialist Co., Inc. *Id.* Mata served both Gulf Crane and C&D Production, and they filed answers. Dkt. 24, 27. Mata alleges that the Defendants were aware that the basket transfer in which Corey was injured involved a high degree of risk, "especially given the weather conditions at the time," and he further alleges that Corey suffered "horrific" injuries, including a broken back and traumatic brain injury. He seeks past and future damages for Corey's medical treatment, lost wages, and pain and suffering, and punitive damages. He also brings claims on behalf of Corey's minor child, including punitive damages. Mata seeks actual damages in this case "in excess of $85,000,000", and he seeks a similar amount of punitive damages.

Gulf Crane filed a motion to transfer venue to the Western District of Louisiana, Lafayette Division. Dkt. 25. Freeport and C&D filed notices that they joined in and adopted Gulf Crane's motion. Dkt. 31, 32. The motions have now been fully briefed.

## STANDARD FOR CONVENIENCE TRANSFERS

Section 1404(a) allows a district court to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The district court has broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987).

---

[1] The Fourth Amended Complaint changed the name of the Freeport entity to "Freeport-McMoRan Oil & Gas LLC." Although there is no record that this entity was separately served, Freeport's lawyers have filed an answer on the newly-added entity's behalf. Dkt. 23.

The Court must first determine whether this suit might have been brought in the transferee venue. *In re Volkswagen of Am., Inc*., 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*In re Volkswagen II*). If the transferee venue is proper, it then is the movant's burden to demonstrate that the transferee is clearly more convenient than the venue chosen by the plaintiff, *i.e.,* Galveston, Texas. *Id*. at 315.

To determine whether the movant has met this burden, the Court must analyze a set of public and private interest factors, no single one of which is dispositive. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*In re Volkswagen I*). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*. The Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine Construction Company, Inc. v. United States Dist. Court for the Western Dist. of Texas*, —— U.S. ——, ——, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013).

The Fifth Circuit has reiterated that the party seeking the transfer "'must show good cause' for the transfer"—in other words, "the moving party must satisfy the

statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen II,* 545 F.3d at 315 (quoting 28 U.S.C. § 1404(a)). If the movant "demonstrates that the transferee venue is clearly more convenient" than the plaintiff's chosen venue, the district court should grant the transfer. *Id.*[2]

## ANALYSIS

### A. Could this lawsuit have been brought in the Western District of Louisiana, Lafayette Division?

Mata alleges that he and all plaintiffs are citizens and residents of Louisiana. Defendant Gulf Crane asserts that it is a Louisiana corporation with an office in Broussard, Lafayette Parish, Louisiana in the Western District of Louisiana. Gulf Crane also asserts that Defendant Freeport McMoRan Oil & Gas, Inc. is a Delaware Company with its registered office in Louisiana located in Baton Rouge and another office in Lafayette. Neither Mata nor Freeport contests this assertion.

Similarly, Gulf Crane asserts that Defendant C & D Production is a Louisiana corporation with an office in Houma, Louisiana. Again, neither Mata nor C&D contests this assertion.

---

[2] The plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis. Instead, the Fifth Circuit has explained that, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen II,* 545 F.3d at 311. Thus, by requiring that a movant show the transferee venue is "clearly more convenient," "[a] plaintiff's choice of [venue] is given 'some'—significant but non-determinative—weight." *Weber v. PACPT XPP Technologies, AG*, 811 F.3d 758 (5th Cir. 2016) (citing *Atl. Marine,* 134 S. Ct. at 581 n.6.).

Accordingly, the Court will assume that this action could have been brought in the Western District of Louisiana, Lafayette Division. *See* 28 U.S.C. §§ 1391(b)-(d), 1400(b).

## B. Private-Interest Factors

### 1. Relative Ease of Access to Sources of Proof

Gulf Crane's motion focuses on the fact that the Defendants have offices in Louisiana, and it therefore contends that any relevant corporate documents must be located in Louisiana. Gulf Crane also points out that sections of the crane used to transfer Corey Mata are currently being stored in Louisiana. However, the Court notes that there are no product liability claims at this point in this lawsuit—the primary contention in Mata's Fourth Amended Complaint is that the Defendants were negligent in operating the crane by conducting the basket transfer in light of the weather conditions that day, not that the crane itself was negligently manufactured, installed, or maintained.

Defendants have identified twelve persons, other than Corey Mata himself, with knowledge of the accident as "witnesses" or "involved" persons. Defendants argue that these individuals are located in Louisiana and that this supports transfer. However, the Court notes that one person listed has a Mississippi address, and four other witnesses' whereabouts are "unknown." Defendants seem to argue that cell phone area codes can be used a substitute for a person's known domicile. The Court finds this proposition unpersuasive on the facts provided.

There is no question that the accident in which Corey Mata was injured occurred off the coast of Texas, in High Island Block A 537, while he was accessing Freeport's offshore platform via a personnel basket transfer. Further, there is no dispute that Corey's

substantial post-accident medical care took place within the Southern District of Texas, not Louisiana. Corey Mata was first evacuated to and treated at UTMB Galveston, and then treated at Houston-area rehabilitation facilities, for an extended period of time, June 13, 2015 through October 23, 2015. Mata has identified nine UTMB doctors, four nurses, and three other medical professionals as potential medical witnesses. Additionally, he has identified three other doctors in the Houston area who were involved in his post-accident care. *See Perry v. Autocraft Invs., Inc.*, 2013 WL 3338580, at *2 (S.D. Tex. July 2, 2013) (concluding that the first private interest factor weighed in favor of transfer because the accident, as well as all of plaintiff's medical care, occurred in the transferee location); *see also Bennett v. Moran Towing Towing Corp.*, 3:15-CV-198, 2016 WL 374495, at *2 (S.D. Tex. Feb. 1, 2016) (where medical records were in Houston area, but relevant company records were in Connecticut, "transferring this case to Connecticut would not alleviate potential record access problems but merely shift the burden of these problems from Moran Towing to Bennett.").

Defendants argue that Corey's medical records can easily be sent via electronic transfer to Lafayette, and they imply his medical records will not be as important to the trial of this personal injury case as their own documents relating to the accident investigation. Defendants provide little by way of actual evidence to support this argument. There are no details as to the width or breadth, or ease of transfer to either Galveston or Lafayette, of the relevant documents from either side. Further, this argument would appear to apply equally to Defendants' corporate documents.

Accordingly, the Court finds that, on balance, Galveston provides a relatively easier access to sources of proof, particularly the accident site. This factor weighs slightly in favor of transfer.

### 2. Availability of Compulsory Process to Secure the Attendance of Unwilling Witnesses

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of unwilling witnesses by a court order. *See In re Volkswagen II*, 545 F.3d at 316; *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 n.6, 187 L. Ed. 2d 487 (2013). Under the Federal Rules of Civil Procedure, a district court may enforce a subpoena: (A) for trial, hearing, or deposition within 100 miles of the place in which the witness resides, works, or regularly transacts business in person; or (B) anywhere within the state in which the witness works, resides, or regularly transacts business in person, if the person is a party or party's officer, or if a non-party trial witness will not not incur substantial expense. FED. R. CIV. P. 45(c)(1)(A)-(B).

Some courts in this District have noted that witnesses who are employed by one party to the litigation are often required by their employers to attend and testify at trial, even if they are not within the subpoena power of the court. *See, e.g., JPT Group, LLC. v. Steven Madden Retail, Inc.*, CV H-15-3264, 2016 WL 3523878, at *3 (S.D. Tex. June 28, 2016); *Pension Advisory Grp. Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 711 (S.D. Tex. 2011) (finding that a "motion to transfer under 28 U.S.C. § 1404(a) may be

denied when the witnesses are employees of the defendant and their presence can be obtained by the party")). But this is not necessarily a hard and fast rule.

As noted above, all of Mata's post-accident medical providers are located in Galveston and Houston, Texas, not Louisiana, and they are all presumably within the subpoena powers of this Court. In contrast, the non-party witnesses identified by Gulf Crane's motion are scattered across a wide swath of Louisiana—according to the witness table provided in Gulf Crane's own motion, many of these persons live more than 100 miles from Lafayette and may therefore outside the subpoena powers of the Western District's Lafayette Division.

Medical providers are key witnesses in a personal injury case, especially where the injuries alleged are so serious, and Gulf Crane has offered no evidence establishing that these medical providers will voluntarily attend trial without a subpoena, or that they are retained expert witnesses. *See Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993) (citation omitted); *Nunez*, 2013 WL 1458916, at *5-6. Accordingly, the Court finds that this factor also weighs in favor of retention.

### 3.  Cost of Attendance for Willing Witnesses

This factor considers the cost of attendance for those witnesses that are more than 100 miles away from the court. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 204–05.

The inconvenience to witnesses includes considerations of additional travel time, meal, lodging expenses, and time away from their regular employment. *Volkswagen I,* 371 F.3d at 205. The Court must also consider the personal costs associated with being away from work, family, and community. *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), *cert denied*, —— U.S. ——, 131 S. Ct. 2447, 179 L. Ed. 2d 1235 (2011) (citing *Volkswagen II*, 545 F.3d at 317).

Courts in this Circuit often give greater weight to the relative convenience of key witnesses and key non-party witnesses in this analysis, and at least one court has noted that "the convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 629 F. Supp. 2d 759, 762–63 (S.D. Tex. 2009); *see also Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993) (declining to transfer maritime personal injury case to Western District of Louisiana, finding that plaintiff's current treating physician was "one of [his] most important witnesses" and that physician resided in Houston, Texas); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (denying motion to transfer to Northern District of Texas where movant made only a general allegations that certain witnesses would be necessary, without identifying the witnesses or the substance of their testimony).

Defendants have identified twelve non-party witnesses, of whom only seven are affirmatively located in Louisiana. Gulf Crane particularly identifies Warren Bateman as the crane operator involved in the accident. Mr. Bateman lives in Franklinton, Washington Parish, Louisiana, 140 miles from Lafayette and 390 miles from Galveston –

outside the 100 mile radius of either court. Other than mere mileage, there is no evidence to address the inconvenience of travel and other personal costs to Mr. Bateman. The Court is not provided a preferred means of transportation for Mr. Bateman, whether train, plane, or automobile, and estimated costs for such travel. Perhaps more critically, there is no evidence as to whether he would be "willing" or "unwilling" to be a witness in this case. The Court declines to simply fill in the blanks.

Mata has identified nineteen non-party medical witnesses located in Galveston or Houston. These witnesses will, presumably, testify on both the existence of harm and the amount of damages by describing the physical injuries Corey Mata sustained, rehabilitation treatments he has endured, medical expenses he has incurred, and past and future damages. Other than arguing there is no need, in their view, for these medical witnesses to travel to Lafayette, Defendants do not address whether these witnesses are "willing" or "unwilling," or the costs of travel for these witnesses.

Taking each party at its word, there are 19 possible witnesses in the Houston/Galveston area; there are at least 7 witnesses around the Lafayette area; and there is also a sizable population of witnesses who live in neither Lafayette nor the Houston/Galveston area, or whose residence is "unknown."

Accordingly, the Court finds that this factor weighs in favor of retention.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

For this factor, courts consider whether transfer would delay already protracted litigation. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013). However "garden-

variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013).

The Court finds this factor is neutral.

The Court thus finds that on balance, the private interest factors strongly favor retention of the case by the Court.

### B. Public-Interest Factors

#### 1. Administrative Difficulties Flowing from Court Congestion

The focus of the first public-interest factor is "'not whether [transfer] will reduce a court's congestion but whether a trial maybe speedier in another court because of its less crowded docket.'" *Rosemond v. United Airlines, Inc.*, No. H–13–2190, 2014 WL 1338690, at *4 (S.D. Tex. Apr. 2, 2014) (quoting *Siragusa v. Arnold*, No. 3:12–cv–04497–M, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013)). In analyzing this factor, courts often consider the median time interval from case filing to disposition. *See, e.g., ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, No. H-09-992, 2009 U.S. Dist. LEXIS 64411, 2009 WL 2244468, at *12 (S.D. Tex. Jul. 27, 2009).

At the outset, the Court notes that it is difficult to engage in a true "apples-to-apples" comparison of the relative congestion of the United States District Court for the Western District of Louisiana, Lafayette Division, and the United States District Court for the Southern District of Texas, Galveston Division. Divisional case management statistics are rare, and judicial vacancies as well as other local factors, such as judicial work assignment orders within Districts, can render such comparisons less reliable.

The Court notes, however, that in the 12-month period ending in June 2016, the Southern District of Texas had over 15,183 civil filings—799 cases for each judgeship.[3] Median time from filing to disposition of civil cases was 7.3 months, and median time from filing to trial for civil cases was 23.4 months. In the same period, the Western District of Louisiana had 2,302 civil filings—329 per judgeship. Median time from filing to disposition of civil cases was 20.3, and median time from filing to trial for civil cases was 30.3 months. The parties have not provided the Court with specific information regarding these factors for the Galveston or Lafayette Divisions within these Districts. The Court notes that the Western District of Louisiana has reported 1,056 civil cases pending more than three years, while the Southern District of Texas reports only 222 such cases. [4]

To argue that this factor favors transfer, Gulf Crane points to another lawsuit involving the same basket transfer is currently pending in the Western District's Lafayette Division. Gulf Crane argues that this second, later-filed, lawsuit should exert a gravitational pull upon this one. *See, e.g., Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different

---

[3] *See* Administrative Office of the U.S. Courts, "U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2016)", *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1.

[4] This is large number is reported as "mostly multidistrict litigation cases." *See* Administrative Office of the U.S. Courts, "Civil Justice Reform Act of 1990: Report of Motions Pending More Than Six Months, Bench Trials Submitted More Than Six Months, Bankruptcy Appeals Pending More Than Six Months, Social Security Appeal Cases Pending More Than Six Months, and Civil Cases Pending More Than Three Years, on September 30, 2015", *available at* http://www.uscourts.gov/statistics-reports/september-2015-civil-justice-reform-act.

District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). This second lawsuit was filed on April 19, 2016, by Troy A. Maillet. Mr. Maillet alleges that he was also in the personnel basket on June 12, 2015, and he filed suit under OCSLA against the same three Defendants. His allegations of negligence in that case, however, are much more detailed and varied. For example, he specifically alleges that the crane itself was deficient and was not properly maintained. Dkt. 1. Further, while there might potentially be a high degree of overlap on the negligence/liability evidence in both cases, these personal injury lawsuits will also hinge upon alleged injuries, medical care, and economic damages that are unique to each plaintiff.

The Court finds that this factor favors retention.

### 2. Local Interest in Having Localized Interests Decided at Home

The local interest factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *In re Volkswagen I*, 371 F.3d 201, 206 (5th Cir. 2004). The Fifth Circuit has further explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09 (1947); *In re Volkswagen* I, 371 F.3d at 206.

In this analysis, "[t]he place of the alleged wrong is one of the most important factors in venue determinations." *Devon Energy Prod., Co. v. Global Santa Fe South Am.*, 2007 WL 1341451, at *8 (S.D. Tex. May 4, 2007) (citing *Lemery v. Ford Motor Co.*, 244 F.Supp.2d 720, 732 (S.D. Tex. 2002)). In this case, the relevant events occurred

in the Gulf of Mexico's High Island Block A 537, which Plaintiff has described as "offshore of High Island, Texas."[5] Although Defendants point out that Louisiana citizens also work in the offshore industry, this general contention does not explain why the local interests within the Western District of Louisiana, Lafayette Division, outweigh the local interests of the Southern District of Texas, Galveston Division, where Mata chose to file suit, where the accident happened, and where Mata received his post-accident medical care.

Accordingly, the Court finds that this factor slightly favors retention.

### 3. Familiarity of the Forum with the Law that Will Govern the Case

Mata brings his claim under a federal statute, the Outer Continental Shelf Lands Act, 43 U.S.C. §1331-1356 ("OCSLA"). This Court finds that, because OCSLA incorporates state law, resolution of this dispute will likely require the application of Texas Law. While the Western District of Louisiana, Lafayette Division is undoubtedly competent to apply Texas law, this Court is undoubtedly more familiar with it.

Consequently, this factor weighs in favor of retention.

---

[5] The incident report in Defendants' exhibits identifies Freeport's platform as Platform 537-B in "HI A 537". This structure is located at 28.058265 degrees North latitude and 94.397073 degrees West longitude. *See* Bureau of Ocean Energy Management, Platform Structures, available at https://www.data.boem.gov/homepg/data_center/platform/platform/platformlist.asp.

**4.  Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law.**

Because there are no conflict of laws issues that would make this case better suited for either this Court or the Western District of Louisiana, this factor cannot weigh either for or against transfer.

Accordingly, this factor is neutral.

## CONCLUSION

After careful consideration of the pleadings, the motion to transfer venue, the responses and replies, and, after weighing the relevant factors, the Court concludes that Defendants have not shown the Western District of Louisiana, Lafayette Division is a clearly more convenient venue for this lawsuit, and "on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine*, 134 S. Ct. at 581 (quoting 28 U.S.C. § 1404(a)).

Accordingly, the Defendants' motions to transfer are **DENIED**.

SIGNED at Galveston, Texas, this 14th day of October, 2016.

George C. Hanks Jr.
United States District Judge